# United States Court of Appeals
## For the First Circuit

No. 12-1462

DYNELL LATSON and ANNABEL LATSON,

Plaintiffs, Appellants,

v.

PLAZA HOME MORTGAGE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,[*] Associate Justice,
and Selya, Circuit Judge.

Robert D. Loventhal on brief for appellants.
AiVi Nguyen on brief for appellee.

February 27, 2013

---

[*]Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.    Massachusetts residents Dynell and Annabel Latson sued their mortgage lender, Plaza Home Mortgage, Inc., alleging state common law and statutory violations in making two house loans.  The district court dismissed for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and the Latsons appealed.  We review the decision de novo, accepting as true all well-pleaded facts and drawing all reasonable inferences from them in favor of the plaintiffs-appellants.  Tasker v. DHL Ret. Sav. Plan, 621 F.3d 34, 38 (1st Cir. 2010).  The enquiry is whether "the combined allegations, taken as true, . . . state a plausible, [rather than] merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).  We think they do not as to the Latsons' common law claim, and the substantive issues raised under the statute are obviated by untimeliness.  We accordingly affirm.

If true, the complaint, with the attached exhibits, see Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 n.1 (1st Cir. 2001), would establish the following facts.  In March 2006, the Latsons bought a three-family dwelling in Dorchester, Massachusetts, financing the entire $525,000 price with two mortgage loans from Plaza.  The first, for $367,500.00, had a starting interest rate of 6.75% adjustable as high as 11.75%.  The second, for $157,500.00, had a fixed rate of 11.50%.

-2-

In August 2011, more than five years later and after the collapse of the housing market, the Latsons hired a lawyer, who sent Plaza a demand letter citing the Massachusetts consumer protection statute, Mass. Gen. Laws ch. 93A, § 9(3). It included allegations that Plaza had not adequately disclosed the terms of the Latsons' loans before their signing. The Latsons sought damages of "at least $100,000" as well as "interest, costs and attorneys' fees." Plaza rejected the claims, and the Latsons filed this action in federal district court under its diversity jurisdiction.

They charged that in making the two home loans Plaza breached the implied covenant of good faith and fair dealing under Massachusetts law and violated the Commonwealth's consumer protection statute, Mass. Gen. Laws ch. 93A, §§ 2, 9. The specific allegations were that prior to closing Plaza failed to provide them with a proper commitment letter, good-faith estimate, or other documents required by the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601–2617, and gave them insufficient opportunity to review the terms of the loans. They also claimed that Plaza either "knew or should have known" that an appraisal of the property that the Latsons obtained at Plaza's request was "too high." The Latsons asserted that all these acts and omissions were actionable under both their common-law and statutory claims.

In its motion to dismiss, Plaza denied that the Latsons had alleged any conduct that breached the covenant of good faith and fair dealing or violated chapter 93A; it also argued that the statute of limitations had run on the statutory claim. The Latsons filed no response, and the district court granted the motion. The Latsons moved for reconsideration, which the district court refused, and then filed this timely appeal.

The Massachusetts covenant of good faith and fair dealing is taken to be implied in every contract, Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991), and provides "that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," id. (quoting Drucker v. Roland Wm. Jutras Assocs., 348 N.E.2d 763, 765 (Mass. 1976)) (internal quotation mark omitted). To the point here, the covenant only "governs conduct of parties after they have entered into a contract." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) (citing Levenson v. L.M.I. Realty Corp., 575 N.E.2d 370, 372 (Mass. App. Ct. 1991)). Once they have done so, the covenant "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in

-4-

their performance." <u>Uno Rests., Inc.</u> v. <u>Bos. Kenmore Realty Corp.</u>, 805 N.E.2d 957, 964 (Mass. 2004).

Here, the guaranteed "fruits" of the Latsons' two loan contracts with Plaza were the loan funds, which the Latsons unquestionably received, subject to repayment terms they do not claim to have been violated. The allegedly wrongful conduct they describe all occurred before the contracts existed, not in violation of their terms after formation. The injuries claimed were in contract preparation, not contract performance. Although the Latsons assert that the covenant applies to parties simply negotiating a contract, the cases they cite for this proposition contain no such statements. <u>See, e.g.</u>, <u>Finard & Co.</u> v. <u>Sitt Asset Mgmt.</u>, 945 N.E.2d 404 (Mass. App. Ct. 2011). The district court correctly dismissed the good faith and fair dealing claim.

Next is the charge that Plaza violated the Massachusetts consumer protection statute, which gives a cause of action to those "injured" by "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, §§ 2(a), 9(1); <u>see also</u> <u>Hershenow</u> v. <u>Enter. Rent-A-Car Co. of Bos.</u>, 840 N.E.2d 526, 534 (Mass. 2006). The district court dismissed this claim on the grounds that the Latsons had not pleaded acts by Plaza that were actually unfair or deceptive, and that in any event they had not alleged a causal connection between the damages alleged and the acts said to have been unfair or deceptive.

We do not reach these issues, however, because the statute of limitations is an even more straightforward basis for dismissing the chapter 93A claim.  See Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002) (we may affirm an order granting a motion to dismiss for any reason supported by the record).  The limitations period for chapter 93A actions is four years from injury.  Mass. Gen. Laws ch. 260, § 5A; Cambridge Plating Co. v. Napco, Inc., 991 F.2d 21, 25 (1st Cir. 1993); accord Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 560 N.E.2d 122, 125-26 (Mass. App. Ct. 1990).  The Latsons signed the mortgage agreements at issue in March 2006, and their complaint alleges that date as the commencement of their injury,[1] described as payment of too much interest as required by "economically unviable" loan terms.  The four-year period, therefore, began to run on the signing date when the interest began to accrue.  They did not send the required 93A demand letter, however, until August 2011, more than a year after the limitations period expired.

Although the Latsons' motion to reconsider suggested that the district court should toll the limitations period under the discovery rule or the fraud exception, they invoke no basis for applying either one.  While the discovery rule stops the

---

[1]The Latsons' complaint dates their injury to March 21, 2000, but this is an obvious typographical error; clearly, they intended to refer to March 21, 2006, the date they signed the loan agreements.

limitations clock until a plaintiff knows (or reasonably should know) that he has or may have been harmed by a defendant's conduct, see Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990), so far as it matters in this case, it does so only when the injuries are "inherently unknowable" at the moment of their occurrence. Patsos v. First Albany Corp., 741 N.E.2d 841, 846 & n. 8 (Mass. 2001) (internal quotation marks omitted). Here the interest terms and the implications of their burdens were apparent when the Latsons signed and got their money, a conclusion underscored by the Massachusetts rule that the terms of written agreements are binding whether or not their signatories actually read them. See St. Fleur v. WPI Cable Sys./Mutron, 879 N.E.2d 27, 35 (Mass. 2008).

As for the argument that a fraud exception tolls the statute of limitations, neither the complaint nor the Latsons' appellate brief speaks of any fact indicating fraud by Plaza. Accordingly, the chapter 93A claim is time barred and was properly dismissed.

Affirmed.