# United States Court of Appeals
## For the First Circuit

No. 19-1143

MARY KATHRYN O'BRIEN,

Plaintiff, Appellant,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Stahl, and Lipez,
Circuit Judges.

Josef C. Culik, with whom Kristin L. Thurbide was on brief,
for appellant.
Peter F. Carr, II for appellees.

January 17, 2020

**STAHL, Circuit Judge.** Plaintiff Mary Kathryn O'Brien appeals from the district court's dismissal of her complaint against defendants Deutsche Bank National Trust Company ("Deutsche Bank"), the current holder of a mortgage on her property, and Select Portfolio Servicing, Inc. ("SPS"), the servicer of the mortgage loan. O'Brien defaulted on the loan in September 2008. Ten years later, O'Brien sued SPS and Deutsche Bank in Essex Superior Court, alleging that the loan was predatory because at its inception the lender knew or should have known that she would not be able to repay it. The complaint alleged two counts: first, that defendants committed unfair and deceptive practices by enforcing a predatory mortgage loan in violation of the Massachusetts Consumer Protection Act, General Laws Chapter 93A ("Chapter 93A"), and second, that they collected or attempted to collect on the mortgage loan in an unfair, deceptive, or unreasonable manner in violation of the Massachusetts Fair Debt Collection Practices Act, General Laws Chapter 93, § 49 ("Chapter 93, § 49"). Defendants removed the case to federal district court and moved to dismiss O'Brien's complaint. The district court dismissed the first count as time-barred and the second count on the ground that Chapter 93, § 49 does not provide a private right of action. We affirm the dismissal of both counts on statute-of-limitations grounds.

## I.    Factual Background

Because this appeal arises from an order of dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, we draw the operative facts primarily from the complaint.  Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013). We may also incorporate facts from "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Id. (quoting Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).

In January 2002, O'Brien, a realtor by profession, purchased a 13-acre horse farm (the "Property") in Newbury, Massachusetts, on which she intended to operate a horse boarding business.  The Property then consisted of a duplex home, a barn, horse sheds, and fields.  She paid $725,000.00 for the Property, putting down $145,000.00 and financing the remaining $580,000.00 with a mortgage loan issued by First National Bank of Ipswich ("FNB").  The mortgage was duly recorded.

In June 2003, O'Brien refinanced the mortgage with a loan from FNB in the amount of $825,000.00, which was duly recorded.  O'Brien used the excess funds to renovate the Property, which in her view direly needed repairs.  She subsequently suffered financial difficulties and sought to refinance her mortgage again to acquire additional funds.  Unable to obtain refinancing from a number of traditional lenders, O'Brien met with a mortgage broker

- 3 -

named George Manemanus, who was reputed to be "a guy who could do anything." Manemanus accepted her incomplete mortgage application, which included no financial documentation, and filled in his own estimates of her income, expenses, and assets. As a result, the completed application falsely stated that O'Brien's gross monthly income was $16,854.00. O'Brien was approved for and accepted a refinanced mortgage loan in the amount of $825,000.00 from Washington Mutual Bank, FA ("WaMu").[1] O'Brien closed on the loan on March 4, 2005, and the mortgage was duly recorded. That is the mortgage at issue in this litigation.

The mortgaged property secured an adjustable rate note. The initial monthly payment of principal and interest was $2,749.33, and with taxes and insurance, the total payable was approximately $3,330.33. Although the initial interest rate was set at 4.572%, prior to O'Brien's eventual default it had adjusted to as high as 7.5%. Her required payments considerably outpaced her actual annual income during 2004, 2005, and 2006, which was $32,773.00, $30,077.00, and $8,347.00, respectively. O'Brien made payments for a few years using savings, cash received at the time of refinancing, and cash advances on various credit cards. In

---

[1] The record does not explain O'Brien's motivation for obtaining a second refinancing loan in the same amount as the first—$825,000.00—but with a more unfavorable rate of interest.

September 2008, O'Brien ran out of savings and credit and defaulted on the loan.

Also in September 2008, WaMu failed and was placed into the receivership of the Federal Deposit Insurance Corporation. Subsequently, the mortgage was transferred to JPMorgan Chase Bank, N.A. ("Chase"). On February 24, 2009, the mortgage was assigned from Chase to Deutsche Bank. That assignment was duly recorded.

In August 2010, O'Brien filed for Chapter 13 bankruptcy protection to avoid a scheduled foreclosure sale. However, O'Brien could not afford the plan's monthly payments to the bankruptcy trustee, and the case was ultimately dismissed. In November 2017, O'Brien, facing foreclosure, once again filed for bankruptcy protection to prevent that action. She again could not afford scheduled payments, and that case was also dismissed. The loan servicer, SPS, consistently sent O'Brien monthly statements demanding payment, with the exception of the time periods she was in bankruptcy proceedings. O'Brien remains in default.

## II. Procedural Background

On September 13, 2018, O'Brien sent defendants a demand letter alleging a violation of Chapter 93A "by attempting to enforce a loan that they know [sic] the borrower from the outset could never repay" and demanding a reasonable offer of settlement. See Mass. Gen. Laws ch. 93A, §§ 2(a) ("Unfair methods of competition and unfair or deceptive acts or practices in the

- 5 -

conduct of any trade or commerce are hereby declared unlawful."), 9 (providing a private right of action to any person injured by another's "use or employment" of any method, act, or practice declared unlawful under § 2 and requiring a written demand for relief). She also contended that defendants violated Chapter 93, § 49 "[b]y failing or refusing to modify the terms, and instead continuing to enforce predatory terms." See Mass. Gen. Laws ch. 93, § 49 (mandating that creditors and their assignees shall not "collect or attempt to collect" certain debts "in an unfair, deceptive or unreasonable manner"). Defendants rejected O'Brien's allegations and request for a settlement offer in a response dated November 20, 2018.

Also on September 13, 2018, O'Brien filed a complaint in the Commonwealth of Massachusetts, Essex Superior Court, alleging in two counts that defendants committed unfair and deceptive practices by enforcing a predatory mortgage loan in violation of Chapter 93A, and that they collected or attempted to collect on the mortgage loan in an unfair, deceptive, or unreasonable manner in violation of Chapter 93, § 49. She sought an injunction against foreclosure on the Property, as well as reformation or rescission of the mortgage, damages, costs, and attorney's fees.

Defendants removed the action to the United States District Court for the District of Massachusetts on diversity

grounds.[2]  See 28 U.S.C. §§ 1332, 1446.  On December 4, 2018, O'Brien filed an amended complaint.  On December 10, defendants moved to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief could be granted.  Defendants argued that all claims by O'Brien arising out of the origination of the mortgage loan by WaMu are barred by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d); that defendants, as assignee and servicer of the loan, cannot be liable for origination claims; and that the claims are time-barred by the applicable four-year statute of limitations, Massachusetts General Laws Chapter 260, § 5A.

On January 18, 2019, the district court granted defendants' motion to dismiss both counts.  See O'Brien v. Select Portfolio Servicing, Inc., No. 18-12148-RGS, 2019 WL 267475, at *3-4 (D. Mass. Jan. 18, 2019) ("O'Brien I").  The district court ruled that O'Brien's Chapter 93A claim, though not jurisdictionally barred by FIRREA, is nonetheless time-barred because the four-year limitations period began when O'Brien closed on the loan on March 4, 2005.  The district court further

---

[2] O'Brien is a Massachusetts resident.  Deutsche Bank is a national trust company with a principal place of business in California.  SPS is a Utah corporation with a principal place of business in Utah.  Accordingly, there is complete diversity among the parties.  See 28 U.S.C. § 1332.

determined that Chapter 93, § 49 does not provide a private right of action.  See id. at *4.  O'Brien timely appealed.

### III. Discussion

We review de novo a district court's dismissal of a complaint under Rule 12(b)(6).  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 231 (1st Cir. 2013).  Under this standard, we accept "as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Id. (quoting Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011)).  We may also review "any documents attached to the complaint or incorporated by reference therein." Id.  In assessing the sufficiency of the complaint under Rule 12(b)(6), we first "disregard all conclusory allegations that merely parrot the relevant legal standard," and then "inquire whether the remaining factual allegations state a plausible, rather than merely a possible, assertion of defendants' liability." Id.  Further, we "may affirm the order of dismissal on any ground made manifest by the record."  Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (quoting Román-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010)).

It is undisputed that Massachusetts law governs this diversity case, and we review the district court's interpretation of state law de novo.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 49 (1st Cir. 2009).  State law includes the applicable

state statute of limitations.  Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015).  We address each count of O'Brien's complaint in turn.

### A.    Count One: The Chapter 93A Claim Is Time-Barred

O'Brien alleges in Count One that "[d]efendants committed unfair and deceptive practices by enforcing a mortgage, the terms of which are unlawful," in violation of Chapter 93A, § 2.    O'Brien argues that defendants' collection attempts constitute "use" or "employment" of the allegedly unfair mortgage under Chapter 93A, § 9.  She presents a collection statement dated August 15, 2018, to illustrate that defendants' actions fall within the statute of limitations.

O'Brien's Chapter 93A claim is time-barred because she does not show that any alleged collection action that occurred after September 13, 2014, gave rise to a claim in its own right. The limitations period for claims brought under Chapter 93A is four years from the date the cause of action accrues.  Mass. Gen. Laws ch. 260, § 5A; see Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013) ("The limitations period for chapter 93A actions is four years from injury.").  A cause of action accrues when "the plaintiff can file suit and obtain relief." Quality Cleaning, 794 F.3d at 203 (quoting Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 105 (2013)).

O'Brien's claim, as alleged, accrued at the inception of the loan, which "was issued in violation of established principles of fairness" and "was unaffordable to O'Brien from the outset." Regardless, she was approved for and accepted the loan, the terms of which were clearly enumerated in the documents she signed at closing. It was by then apparent to O'Brien that the required monthly payments outpaced her income. Accordingly, "[t]he four-year period . . . began to run on the signing date when the interest began to accrue." Latson, 708 F.3d at 327. That conclusion is consistent with "the Massachusetts rule that the terms of written agreements are binding whether or not their signatories actually read them." Id.

O'Brien presents no authority establishing that each of defendants' subsequent collection statements under the terms of the loan was an unfair practice that independently violated Chapter 93A, § 2 and triggered a new limitations period. To the contrary, generally "a party's acting according to the express terms of a contract cannot be considered a breach of the duties of good faith and fair dealing." Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 97 (1st Cir. 2014) (quoting Big Yank Corp. v. Liberty Mut. Fire Ins. Co., 125 F.3d 308, 313 (6th Cir. 1997)). Further, "[t]o state a viable claim [under Chapter 93A], the plaintiff must allege that she has suffered an 'identifiable harm' caused by the unfair or deceptive act that is separate from the violation

itself." Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017) (quoting Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 (Mass. 2013)); see Rhodes v. AIG Domestic Claims, Inc., 961 N.E.2d 1067, 1076 (Mass. 2012) ("[T]o recover under c. 93A, § 9, a plaintiff must prove causation—that is, the plaintiff is required to prove that the defendant's unfair or deceptive act caused an adverse consequence or loss."). Here, O'Brien does not provide authority demonstrating that the alleged harm caused by each statement constitutes the requisite "identifiable harm" separate from that caused by the underlying unfair loan. See Shaulis, 865 F.3d at 10 (quoting Tyler, 984 N.E.2d at 745).[3] Thus, we need not review the district court's determination that O'Brien's demand for equitable relief is not barred by FIRREA. See O'Brien I, 2019 WL 267475, at *2.

---

[3] O'Brien is not helped by the Massachusetts discovery rule, which triggers the accrual of the cause of action for the purposes of the statute of limitations "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct." In re Sheedy, 801 F.3d 12, 20 (1st Cir. 2015) (quoting Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006)); see Bowen v. Eli Lilly & Co., 557 N.E.2d 739 (Mass. 1990). Here, the facts as alleged demonstrate O'Brien's contemporaneous knowledge of her injury.

- 11 -

**B.     Count Two: The Chapter 93, Section 49 Claim Is Time-Barred**

O'Brien alleges in Count Two that "[d]efendants collected or attempted to collect O'Brien's mortgage in an unfair, deceptive, and unreasonable manner" in violation of Chapter 93, § 49. She argues that the monthly collection attempts were unfair because they constituted enforcement of inherently unfair and deceptive loan terms. O'Brien again points to a collection statement dated August 15, 2018, to demonstrate that this claim is not barred by the statute of limitations. She also contends the district court erred in determining that Chapter 93, § 49 does not provide a private right of action. See O'Brien I, 2019 WL 267475, at *4.

We need not reach the district court's determination. O'Brien's Chapter 93, § 49 claim, even assuming it could be brought independently, is time-barred because she does not show that any alleged collection action that occurred after September 13, 2014, gave rise to a new claim. This claim relies on the alleged unfairness of the loan at origination. Specifically, O'Brien alleges that "the imposition of terms that were unfair at the outset continues every month" through the collection statements. In addition, she alleges that "[t]he enforcement of the loan terms has been consistent throughout the life of the loan," that "[e]ach month, Deutsche Bank has its mortgage servicer, SPS, send O'Brien

- 12 -

a mortgage statement demanding payment under the original note," and that "[s]uch statements have been sent to [her], with the exception of the time she was in bankruptcy, virtually every month" through this time period. Accordingly, the enforcement that O'Brien identifies began in 2005 and continued through the loan's assignment to Deutsche Bank in February 2009. O'Brien's cause of action thus accrued more than four years before she brought this claim in September 2018. See Mass. Gen. Laws ch. 260, § 5A. O'Brien presents no authority establishing that each subsequent collection statement pursuant to the original loan terms triggered a new limitations period.[4]

---

[4] As to both Counts, O'Brien waives any argument that her claims are preserved by a "continuing violation theory" that would extend the initial limitations period with each monthly collection statement. Some courts in this Circuit have considered that theory in regard to debt collection letters in Fair Debt Collection Practices Act cases. See, e.g., Simard v. LVNV Funding, LLC, No. 10-11009-NMG, 2011 WL 4543956, at *5 (D. Mass. Sept. 28, 2011)("Under a continuing violation theory, each new communication from the debt collector is viewed as a separate violation and a new statute of limitations period accrues. However, if the new communication concerns an old claim, the new communication is subject to the statute of limitations period for the old claim." (internal citation omitted)); Everton v. HSBC Bank USA, N.A., No. 18-10264-FDS, 2018 WL 5084838, at *3 (D. Mass. Oct. 17, 2018) ("The mortgage statements containing the disputed principal balance were new communications concerning an old claim . . . not new claims or separate violations."), appeal dismissed, 2019 WL 2173782 (1st Cir. Apr. 1, 2019). Here, where it is alleged that collection statements were issued pursuant to the allegedly unfair terms of the original loan, we discern no basis for applying a continuing violation theory. See Frappier, 750 F.3d at 97 ("[Defendant's] acceptance of payments under the agreed-upon terms of the mortgage does not give rise to a claim of bad faith."); Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 7 (1st Cir. 2005)

## IV.  Conclusion

The district court's dismissal of O'Brien's complaint is AFFIRMED.

---

("In order for the serial violation theory [of the continuing violation doctrine] to apply, the act that falls within the limitations period must itself constitute an actionable violation."); Gilbert v. City of Cambridge, 932 F.2d 51, 58 (1st Cir. 1991) (stating that in applying continuing violation theory, "courts must be careful to differentiate between [unlawful] acts and the ongoing injuries which are the natural, if bitter, fruit of such acts" (quoting Jensen v. Frank, 912 F.2d 517, 523 (1st Cir. 1990))).