# United States Court of Appeals

## For the First Circuit

No. 08-1444

JAMES YEOMALAKIS, on behalf of himself and all
others similarly situated,

Plaintiff, Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella and Boudin, Circuit Judges,
and Schwarzer,[*] District Judge.

Barry L. Kramer with whom Law Offices of Barry L. Kramer,
David Pastor and Gilman and Pastor, LLP were on brief for
appellant.
John A. Houlihan with whom Gail Elise Cornwall and Edwards
Angell Palmer & Dodge LLP were on brief for appellee.

April 3, 2009

---

[*]Of the Northern District of California, sitting by
designation.

**BOUDIN**, <u>Circuit Judge</u>. James Yeomalakis, a resident of Massachusetts, has or had a credit card account with Washington Mutual Bank[1], which was a federally chartered savings association with its principal place of business in Nevada. Credit card holders customarily pay an interest charge on unpaid balances. Washington Mutual increases the applicable annual percentage interest rate ("APR") for cardholders who default on one of the obligations created under their account agreement (for example by making a required payment late).

Washington Mutual, assertedly in line with industry custom, backdates its APR increase to the start of the existing month's billing cycle. Thus, if Washington Mutual determines on the last day of a billing cycle to increase a cardholder's APR because of a default on the prior day, the new rate is applied starting with the first day of the existing cycle. To challenge this practice, Yeomalakis brought suit against Washington Mutual in the Massachusetts Superior Court, but the case was removed by the latter to the federal district court. 28 U.S.C. § 1332(d)(2) (2006).

---

[1]On December 19, 2008 we granted the motion of the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank to be substituted as the party in interest and stayed the case for 90 days. <u>See</u> 12 U.S.C. § 1821(d)(12)(A)(ii). In discussing the facts and arguments, the opinion refers to Washington Mutual as it is their (now past) practices that are at issue.

Yeomalakis' complaint had two counts:  the first accused Washington Mutual of "Imposing and Enforcing an Illegal Penalty" through "retroactive" rate increases, although it did not explain whether federal or state law underlay the claim (or, if the latter, which state).  The second count alleged that Washington Mutual's actions were unfair and deceptive acts and practices in violation of M.G.L. c. 93A, § 2--essentially, that the retroactive increases were unfair and had not been adequately disclosed.

Washington Mutual moved to dismiss under Fed. R. Civ. P. 12(b)(6), alleging that both counts were preempted by the Home Owners' Loan Act of 1933 ("HOLA") 12 U.S.C. § 1461 et seq. (2006), and various regulations promulgated thereunder by the federal Office of Thrift Supervision ("OTS").  Section 4(g)(1) of HOLA, 12 U.S.C. § 1463(g)(1) (2000), preempts state usury laws and allows credit card companies to charge an interest rate at:

> not more than 1 percent in excess of the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district in which such savings association is located or at the rate allowed by the laws of the State in which such savings association is located, whichever is greater.

Under OTS regulations, "interest" includes payments to a credit card company for "any default or breach by a borrower of a condition upon which credit was extended."  12 C.F.R. § 560.110(a)(2008).  OTS regulations also preempt state laws that "impose requirements regarding . . . [d]isclosure and advertising,

-3-

including laws requiring specific statements, information, or other content to be included in ... billing statements, credit contracts, or other credit-related documents."  Id. § 560.2(b)(9).

Following Yeomalakis' opposition, the district court granted the motion to dismiss.  It said that HOLA clearly preempted an attack under state law on the level of interest rates, even if labeled "a penalty" by Yeomalakis.  As to his chapter 93A claim, the court held that it was preempted to the extent it sought recovery based on the notion that some different rate should have been charged; and, so far as it rested on the inadequacy of disclosure, it fell under the OTS regulation forbidding states from regulating pertinent "[disclosure and advertising."

Yeomalakis then filed a motion under Fed. R. Civ. P. 59(e) to amend the judgment, requesting the opportunity to file an amended complaint asserting a federal cause of action under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. (2006). The motion was denied by the district court.  Yeomalakis now appeals both the dismissal of his state law claims and the denial of his motion to amend.

Before turning to the merits, developments subsequent to the district court proceedings have to be recounted.  On September 25, 2008, Washington Mutual was closed, the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver and many of WaMu's assets were sold to Chase Bank.  On December 18, 2008,

the FDIC notified the court, and the next day we granted, the FDIC's motion to substitute for WaMu as the successor in interest and issued a 90-day stay of the above-captioned action.  See 12 U.S.C. § 1821(d)(12)(B).

Yeomalakis then moved to substitute Chase Bank as the appropriate successor in interest to Washington Mutual and/or add Chase Bank as a necessary party defendant.  The FDIC in turn, now seeks an additional 180-day stay and a ruling that we require Yeomalakis to exhaust his claims through the FDIC Receiver's administrative process mandated by 12 U.S.C. §§ 1821(d)(3)-(13), enacted by Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA").  In subsequent filings, Yeomalakis objected to the FDIC request for a further stay and Chase objected to being added or substituted for the FDIC.

We deal first with the FDIC's motion.  FIRREA is a procedural muddle.  The statute both limits court jurisdiction over claims against the FDIC, see 12 U.S.C. § 1821(d)(13)(D)(i), and also contains of provisions that could arguably be read to create a different regime for cases that were commenced in court before the FDIC was named as a receiver.  See, e.g., § 1821(d)(6)(A).  We wrestled through the problem in Marquis v. FDIC, 965 F.2d 1148 (1st Cir. 1992), and adopted a pragmatic interpretation that is governing law in this circuit.

Normally the FDIC argues for an expansive reading of FIRREA that would strip federal courts of all jurisdiction, and the opposing party argues for a narrow interpretation that preserves the right to proceed in court without resorting to administrative exhaustion. In Marquis, we rejected the FDIC's most sweeping claims, confirmed that federal courts retain jurisdiction of cases brought before the receivership, but said that courts would usually stay pending cases to allow for administrative exhaustion of claims. 965 F.2d at 1155.

Ordinarily, upon the FDIC's appearance as a receiver, a district court would stay a claim it had not yet decided. However, in this instance the district court has already issued a decision adverse to the claimant, the case had already been briefed and argued and we had already agreed to affirm the judgment below. The decision would have been issued months ago but for the belated notice from the FDIC and our deferral of the decision pursuant to the stay. The stay has now expired and under Marquis the court retains discretion as to what to do. 965 F.2d at 1153-54.

In the present case, as will shortly become clear, Yeomalakis' claims are either barred, un-preserved or unpersuasive. To send the case back to the FDIC for administrative proceedings that could take additional time, followed by review in federal court once again, 12 U.S.C. § 1821(7)(A), makes no sense and would hardly advance Congress' purpose in enacting FIRREA of promptly

-6-

disposing of claims against failed financial institutions. <u>See</u> <u>H.R. Rep. No. 101-54(I)</u>, 101 Cong., 1st Sess., at 418-19, <u>reprinted</u> <u>in</u> 1989 U.S.C.C.A.N. 86, 214-15.

As for Yeomalakis' motion to substitute Chase Bank as a party, it too fails. When Washington Mutual failed, Chase Bank acquired many assets but its agreement with the FDIC retains for the FDIC "any liability associated with borrower claims for payment of or any liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower."[2] Thus the FDIC was and remains the appropriate party in interest. <u>See</u> 12 U.S.C. § 1821(d)(2)(A)(i); <u>see also</u> <u>In re Community Bank of N.</u> <u>Virginia</u>, 418 F.3d 277, 293 n.6 (3d Cir. 2005).

Turning to the merits, we begin with the count I penalty claim. In the district court, Yeomalakis scarcely responded at all to Washington Mutual's contention that the penalty claim was preempted by HOLA. The only discussion of the penalty claim was located under a header entitled "Defendant Misstates What This Case Is About." In that section, Yeomalakis argues that Washington Mutual's interpretation of the illegal penalty claim is mistaken because his allegations are not about the legality of the interest rates or the manner they are calculated.

---

[2]<u>Purchase and Assumption Agreement Among Federal Deposit Insurance Corporation and JP Morgan Chase Bank, National Association</u>, quoted by the FDIC in its motion and available at <u>http://www.fdic.gov/about/freedom/Washington_Mutual</u> P_and_A.pdf

Yet Yeomalakis never explained how his penalty claim should be interpreted or why the penalty claim would not be preempted. Even on appeal, no coherent explanation of this claim is provided. At best, Yeomalakis suggests that Nevada law was violated, depriving the interest rate of protection under section 1463(g)(1). Whatever his theory, the claim, not seriously defended in the district court, cannot be resuscitated now. Daigle v. Maine Med. Ctr., Inc., 14 F.3d 684, 687 (1st Cir. 1994).

As to Yeomalakis' count II claim under chapter 93A, HOLA does not preempt ordinary contractual claims based on state law; Yeomalakis could have argued that Washington Mutual's account agreement did not permit the "retroactive" increase. Similarly, while the OTS regulation purports to preempt state regulation of disclosure and advertising, it is debatable how far HOLA supersedes ordinary fraud claims under state law. See In re Ocwen Loan Servicing, 491 F.3d 638 (7th Cir. 2007) (Posner, J.).

Yet neither in the district court nor on appeal does Yeomalakis explain the gravamen of his chapter 93A claim or how it avoids preemption. Yeomalakis' summary of argument refers cursorily to various bodies of law (Massachusetts law, common law, Nevada law, TILA and a Federal Reserve Board regulation). The brief's argument section is a scatter-gun collection of assertions

some sense of which is supplied by a sampling from among the sixteen headings in the argument section.[3]

It is possible that somewhere in this morass is a version of a claim under chapter 93A that might avoid preemption but there is no indication that it was presented to the district court and it certainly is not illuminated for us. It is not our job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief. See U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 595 (1st Cir. 1993).

Yeomalakis' final claim is that the district court should have given him the opportunity to amend his complaint to allege additional claims under federal and Nevada law. Review is for "manifest abuse of discretion." Council of Ins. Agents & Brokers v. Juarbe-Jimenez, 443 F.3d 103, 111 (1st Cir. 2006) (internal quotation omitted). A Rule 59(e) motion is not properly used to "raise arguments which could, and should, have been made before judgment issued." Harley-Davidson Motor Co. v. Bank of New England, 897 F.2d 611, 616 (1st Cir. 1990).

---

[3]"The District Court Concluded that the Wrongdoing Alleged Was Subject Only to the Control of Federal Law and Regulations Under 12 U.S.C. § 1463(g)(1)"; "A Further Explanation of § 1463(g)(1), A Statute which Is Confusingly Labeled"; "The District Court Treated § 1463(g)(1) as a Federal Preemption Defense to the Conduct Alleged"; "The Ninth Circuit Cases Cited by the Court Are Not Authority for this Court"; "Massachusetts G.L. c. 93A Can Borrow from Federal and Nevada State Law"; "WaMu Fails to Cite any State Law that Would Conflict with Applicable Federal Law."

In this instance, Yeomalakis' counsel, Barry Kramer, has extensive experience with challenges to the very practice at issue in this case, having brought a number of suits in other courts on the same subject. The claims he now wants to add could have been asserted in the original complaint or by amendment after the case had been removed. It was not an abuse of discretion for the district court to deny Yeomalakis yet another bite at the apple.

In sum, Yeomalakis' merits claims are <u>denied</u> as is his motion to substitute or add Chase Bank as a real party in interest. We also <u>deny</u> the FDIC's request for an additional 180-day stay to allow for the completion of any administrative claims. The district court decision is <u>affirmed</u>.

It is so ordered.