# United States Court of Appeals
## For the First Circuit

No. 14-1246

IN RE: LAURA SHEEDY,

Debtor.

LAURA SHEEDY,

Plaintiff, Appellant,

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee;
and JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

David G. Baker, for appellant.
Donn A. Randall, with whom Carol E. Kamm, Jamie L. Kessler and
Bulkley, Richardson and Gelinas, LLP, were on brief, for appellees.

September 1, 2015

**TORRUELLA, Circuit Judge**. This case involves an attempt by a Chapter 13 debtor to avoid foreclosure on her residential mortgage through a lender liability suit in an adversary proceeding within her bankruptcy case. Agreeing with the bankruptcy court, we find all claims to be either time-barred or without merit, and therefore affirm its grant of summary judgment in favor of the creditors.

## I. Background

### A. The Loan and Mortgage

We review the facts in the light most favorable to Debtor-Appellant Laura Sheedy, the party opposing summary judgment. See Rosaura Bldg. Corp. v. Municipality of Mayagüez, 778 F.3d 55, 58 (1st Cir. 2015) (citing Agusty-Reyes v. Dep't of Educ. of P.R., 601 F.3d 45, 48 (1st Cir. 2010)); In re Iannochino, 242 F.3d 36, 39 (1st Cir. 2001) (applying the same standard in a bankruptcy appeal). Sheedy and her husband are self-employed and have worked in various real estate businesses. She considers herself "relatively sophisticated in real estate matters (but not finance)," and she has held a real estate broker license since the early 1980s.

In 1987, Sheedy and her husband purchased a residence in Lexington, Massachusetts. Over the years, the couple continually transferred the property's title amongst themselves and the Cardinal Trust (the "Trust") -- in which Sheedy holds a beneficial

-2-

interest and is also the trustee -- with the purpose of refinancing or using loan proceeds for other legitimate purposes. In one such transaction in 2003, she conveyed title from the Trust to herself. Then, in 2004, she refinanced the property (the "2004 Transaction"). For the 2004 Transaction, Sheedy executed a promissory note (the "Note") for $810,000 in favor of Washington Mutual Bank ("WAMU"). A mortgage corresponding to the 2004 Transaction (the "Mortgage") was also given to WAMU and was properly recorded on April 21, 2004.

The Note provided for an interest rate of 3.625% for five years. Then, the interest rate was set to change annually by adding 2.75% to the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, based on an index issued by the Federal Reserve Board. Whatever the resulting rate was under that formula, the terms of the Note required that it be between 2.75% and 8.625%. Additionally, after the first adjustment following the initial five-year period, all other changes could not be by increments of more than 2%. The initial monthly payment under the Note was $4,109.56, but the terms of the Note were amended in an addendum so that Sheedy would only pay interest during the first five years. This resulted in Sheedy only having to pay $2,446.87 monthly for the first five years.

In 2008, federal regulators closed WAMU and the Federal Deposit Insurance Corporation ("FDIC") was named receiver.

-3-

JPMorgan Chase National Association ("Chase") acquired certain WAMU assets from the FDIC, including an assignment of the Mortgage. Chase then assigned the Mortgage to Deutsche Bank National Trust Company ("Deutsche Bank," and, together with Chase, the "Secured Creditors"), as Trustee for WAMU Mortgage Pass-Through Certificates Series 2004-AR4 (the "Securitized Trust"). Chase continued servicing the loan.

In 2009, by the time the first adjustment in payment was scheduled, Sheedy was current in her loan but faced a decline in business as the recession began. The monthly payment jumped to $4,055.05 -- an amount slightly less than the number provided by the terms of the Note, ignoring the initial interest-only period granted under the addendum. Sheedy could not meet the new payments and she fell into default.

Sheedy retained MFI-Miami -- a mortgage fraud investigation firm that does not engage in the practice of law -- to analyze her loan documents and determine whether she had been misled as to the terms of the Note and Mortgage. MFI-Miami provided her with a "comprehensive analysis" of the 2004 Transaction. The report stated that "[t]here are serious problems with the way this loan was originated . . . which were committed by the lender. It contains elements of illegal bait and switch and deception practices." For example, the report mentioned that the

Truth in Lending statement[1] differs from the terms of the Note because it stated that the payment beginning on the sixty-first month, i.e., at the time of the first adjustment, would be $4,331.44. Thus, Sheedy had been told by WAMU that the first payment due after the adjustment would in fact be higher than what the Note itself reflected, and even higher than what she was actually required to pay when the adjustment occurred. Also, the Truth in Lending statement did not disclose that the payments for the first five years would only include interest and no principal would amortize.

## B.  The Bankruptcy Case

On June 8, 2010, after Deutsche Bank commenced foreclosure proceedings, Sheedy filed for protection under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 et seq. Then, on July 20, 2010, she filed a Chapter 13 plan pursuant to 11 U.S.C. § 1321. As part of her plan, Sheedy raised a series of allegations of lender liability, including that the Mortgage was rescindable under the Truth in Lending Act, 15 U.S.C. §§ 1601-1667f ("TILA"), and that the Secured Creditors violated Massachusetts General Laws Chapter 93A, §§ 1-11 ("Chapter 93A"), as well as "general principles of equity under Massachusetts law" as stated by the

---

[1]  Pursuant to Subpart C of Regulation Z of the Federal Reserve Board, a lender in a refinancing transaction is required to provide a disclosure statement containing, among other data, the payment schedule, the variable rates, and the total payments on the remaining obligation.  12 C.F.R. §§ 226.18, 226.20.

Massachusetts Supreme Judicial Court in Commonwealth v. Fremont Inv. & Loan, NO. 07-4373, 2008 WL 517279 (Mass. Super. Feb. 26, 2008), aff'd as modified, 897 N.E.2d 548 (Mass. 2008).  The plan also proposed that, after rescission, the principal owed under the Mortgage be treated as an unsecured claim of Sheedy's.  That is, instead of tendering the full amount of the loan in exchange for the Mortgage as if the 2004 Transaction had never occurred, Sheedy would only pay a fraction, as she would for all other unsecured claims.

Deutsche Bank filed a proof of claim (the "Secured Claim") preserving its status as a secured creditor in the amount of $842,908.47 due under the Mortgage, and objecting to the confirmation of the plan.[2]  On April 26, 2011, Sheedy filed the instant adversary proceeding to have the bankruptcy court resolve her lender liability claims, adding that Deutsche Bank and Chase were also liable for fraud, deceit, and misrepresentation on the basis that WAMU provided her with inaccurate or false information concerning the terms of the Note and the Mortgage.  Sheedy also objected to the Secured Claim and challenged Deutsche Bank's standing as her creditor.  The Secured Creditors denied the allegations and, following discovery, filed a motion for summary judgment.

---

[2]  The Secured Claim was later transferred to Chase.

## C. The Bankruptcy Court Judgment

The bankruptcy court granted summary judgment in favor of the Secured Creditors and issued a memorandum explaining the bases for its decision. In re Sheedy, 480 B.R. 204 (Bankr. D. Mass. 2012). As to the TILA claim, the bankruptcy court held that it was time-barred since Sheedy first brought this claim within the bankruptcy case in 2010. The statute of limitations for claims for rescission under TILA varies depending on the circumstances, but is -- at most -- three years after the extension of credit. 15 U.S.C. § 1635(f). The 2004 Transaction occurred in April 2004. Thus, any attempt to rescind was initiated well after the right was extinguished by the statute of limitations.

Regarding the Chapter 93A claim, the bankruptcy court found that Sheedy failed to send a written demand prior to commencing suit and that she failed to even specify under which section of Chapter 93A her claim arose.[3] It concluded that the Chapter 13 plan by itself did not constitute a demand as required by Massachusetts General Laws Chapter 93A, § 9, and the applicable

---

[3] We note that Sheedy's verified complaint in the adversary proceedings perfunctorily alleges that her claim under Chapter 93A is based upon the facts that: (1) there was a TILA violation; (2) she had demanded rescission in her Chapter 13 plan; (3) "Deutsche Bank obtained the loan at the time when it was in default"; (4) Chase is a servicing agent of Deutsche Bank, and thus the latter is liable for the actions of the former on agency grounds; and (5) the acts of Deutsche Bank through Chase were "unfair and deceptive" within the meaning of Chapter 93A. There is no further discussion as to why this constituted a violation of Chapter 93A.

statute of limitations had run because actions arising under Chapter 93A "shall commence only within four years next after the cause of action accrues." Mass. Gen. Laws ch. 260, § 5A. Since the 2004 Transaction in which the alleged unfair and deceptive practices occurred closed in April 2004, the statute of limitations for Sheedy's Chapter 93A claims ran out in April 2008.

With respect to Sheedy's claim that the 2004 Transaction was also the result of fraud, deceit, or misrepresentation, as WAMU provided her with inaccurate or false information concerning the terms of the loan, the bankruptcy court held that Sheedy failed to plead the fraud allegations with particularity. The bankruptcy court added that it would have reached that conclusion even if it had taken into consideration the allegations contained in the report prepared by MFI-Miami.[4] Besides the insufficiency of the

---

[4] Sheedy introduced the report and incorporated it by reference into the allegations in her complaint. The bankruptcy court struck the report from the record on the grounds that Sheedy failed to state the preparer's qualifications as an expert pursuant to Federal Rule of Evidence 702. See Poulis-Minott v. Smith, 388 F.3d 354, 359 (1st Cir. 2004) ("Federal Rule of Evidence 702 provides that an expert must be qualified to testify based on the expert's knowledge, skill, experience, training or education. It is the responsibility of the trial judge to act as gatekeeper and ensure that the expert is qualified before admitting expert testimony." (citing Correa v. Cruisers, a Div. of KCS Int'l, Inc., 298 F.3d 13, 24 (1st Cir. 2002))). Sheedy included the bankruptcy court's refusal to admit this evidence as an issue in her summary of the facts on appeal, but failed to develop any arguments, which is sufficient ground for us not to consider the issue. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Furthermore, we would give deference to the bankruptcy court's decision, because

pleadings, the bankruptcy court held that Deutsche Bank and Chase established that the FDIC retained liability relating to borrowers' claims pursuant to the Purchase and Assumption Agreement between the FDIC, as receiver of WAMU, and Chase. That is, Chase never assumed any lender liability of WAMU.[5]

With regard to Sheedy's objection to the Secured Claim on the basis that the Secured Creditors failed to explain how the costs and fees included in the amount claimed were "reasonable and necessary," the bankruptcy court concluded that Sheedy's claim was imprecise and that Sheedy had been provided sufficient information in the form of invoices, bills, checks, and receipts to enable her to specify which costs and fees were unreasonable and unnecessary. Sheedy did not set forth the specific grounds for her objection and failed to meet her burden.

Finally, the bankruptcy court held that Deutsche Bank had standing to initiate foreclosure proceedings against Sheedy because

---

"[t]he trial court has broad discretionary powers in qualification of experts, and that court's decision will be affirmed unless there is clear error." Poulis-Minott, 388 F.3d at 360 (alteration omitted) (internal quotation marks and citation omitted). In any event, even if we were to consider the report, we would still affirm the dismissal of all claims, for the reasons explained below.

[5] See Yeomalakis v. F.D.I.C., 562 F.3d 56, 60 (1st Cir. 2009) ("When Washington Mutual failed, Chase Bank acquired many assets but its agreement with the FDIC retains for the FDIC any liability associated with borrower claims for payment of or any liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower." (citations and internal quotation marks omitted)).

it submitted evidence that it holds the Note, which was endorsed in blank and without recourse by WAMU, and thus is payable to the bearer. In reaching this conclusion, the bankruptcy court dismissed Sheedy's claims that the Mortgage was not validly assigned to the Securitized Trust under the terms of the Pooling and Service Agreement ("PSA") because the Mortgage was assigned in 2010 but the Securitized Trust had been formed in 2004.

Sheedy challenged this decision before the district court, which then affirmed the bankruptcy court.[6] This appeal followed.

## II. Discussion

### A. Standard of Review and Summary Judgment

When reviewing the order of a district court affirming a bankruptcy court's judgment, we "independently examine the bankruptcy court's decision, reviewing findings of fact for clear error and conclusions of law de novo." In re Nosek, 544 F.3d 34, 43 (1st Cir. 2008) (alteration omitted) (quoting In re Northwood Props., LLC, 509 F.3d 15, 21 (1st Cir. 2007)); In re SPM Mfg. Corp., 984 F.2d 1305, 1310-11 (1st Cir. 1993). Thus, we cede no deference to the determinations made by the district court in its review, "but assess the bankruptcy court's decision directly."

---

[6] Sheedy v. Deutsche Bank Nat'l Tr. Co., No. 12-12302, 2014 WL 691612 (D. Mass. Feb. 21, 2014).

In re Am. Cartage, Inc., 656 F.3d 82, 87 (1st Cir. 2011) (citing In re Carp, 340 F.3d 15, 21 (1st Cir. 2003)).

A party requesting summary judgment is entitled to it when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Perry v. Roy, 782 F.3d 73, 77-78 (1st Cir. 2015).  "In bankruptcy, summary judgment is governed in the first instance by [Federal Rule of] Bankruptcy [Procedure] 7056.  By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." In re Varrasso, 37 F.3d 760, 762 (1st Cir. 1994) (citing Fed. R. Bankr. P. 7056); see also In re Moultonborough Hotel Grp., LLC, 726 F.3d 1, 4 (1st Cir. 2013) ("The legal standards traditionally applicable to motions for summary judgment . . . apply without change in bankruptcy proceedings.").

In this process of evaluating a grant of summary judgment, "we are not straitjacketed by the [bankruptcy] judge's reasoning -- quite the contrary, we are free to uphold the court's order on any basis present in the record."  AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015) (alterations omitted) (citing Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 247 (1st Cir. 2013)).

**B. The TILA Claim**

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available . . . and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing . . . ." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). TILA allows consumers to obtain specific disclosures on charges, fees, interest rates, and their rights under the loan. Id. (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). One such right a consumer has under TILA is the right to rescind the loan if the lender fails to deliver certain forms and to disclose important terms accurately, provided that the loan is secured by the borrower's principal dwelling. See 15 U.S.C. § 1635.

The parties agree that the 2004 Transaction is subject to TILA.[7] Sheedy argues that the TILA disclosures she received did not comply with Regulation Z because some of the amounts disclosed turned out to be inaccurate and because her husband never received any disclosures. According to Sheedy, the consequence of her husband not receiving these disclosures is that the 2004 Transaction is subject to rescission under 15 U.S.C. § 1635(a).

---

[7] Pursuant to 15 U.S.C. § 1633, the Board of Governors of the Federal Reserve System has exempted some credit transactions in Massachusetts that are instead regulated under Massachusetts General Laws Chapter 140D, § 10(a). See In re Smith-Pena, 484 B.R. 512, 517 (Bankr. D. Mass. 2013); 12 C.F.R. § 226.29.

Additionally, Sheedy argues that the Secured Creditors cannot avoid liability under TILA by relying on disclosures given as part of the loan obtained when she transferred the property to herself in 2003 because, being a refinancing transaction, the 2004 Transaction required additional disclosures beyond the ones already received by her in 2003. See 12 C.F.R. § 226.20(a) ("A refinancing is a new transaction requiring new disclosures to the consumer.").

We conclude, however, that Sheedy's TILA claim is time-barred and there is no controversy as to the applicable statue of limitations.[8] Under TILA, a consumer's

> right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . .

15 U.S.C. § 1635(f); see also Beach, 523 U.S. at 413. In fact, a consumer may exercise the right to rescind any extension of credit carrying a security interest over his principal dwelling "until midnight of the third business day" after the extension of credit, after receiving notice of the right to rescind, or after receiving

---

[8] We note that Sheedy's counsel appeared to concede at oral argument that her TILA claim was time-barred "as a statutory claim." Nevertheless, we examined it in an attempt to clarify Sheedy's arguments and to avoid confusion regarding her statements that the federal law claims are related to the state law claims, that TILA relief that is time-barred can still be requested in recoupment, and that the TILA claim "informs" her other state law claims.

-13-

all material disclosures.  12 C.F.R. § 226.15(a)(3).  It is when these disclosures are not delivered that "the right to rescind shall expire 3 years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."  Id.  Thus, applying the longer three-year period based on Sheedy's assertion that her husband never received any disclosures, we agree with the courts below that any claim for rescission under TILA for lack of disclosures or inaccuracies was brought more than three years after the consummation of the 2004 Transaction and is time-barred.

Conscious of this limitations period, Sheedy next argues that she would still have a right to request rescission in recoupment by raising it defensively under the Massachusetts statute.  Beach recognized that a debtor in a collections action has a "right to plead recoupment, a defense arising out of some feature of the transaction upon which the [creditor's] . . . action is grounded, [which] survives the expiration of the period provided by a statute of limitation that would otherwise bar the recoupment claim as an independent cause of action."  523 U.S. at 415 (citations and internal quotation marks omitted).  However, in this case, because Congress clearly intended that any TILA action brought outside of the three-year statute of limitations be time-barred, there is no independent ground to raise the right as a

-14-

defense in recoupment.  See id. at 418 ("We respect Congress's manifest intent by concluding that the [TILA] permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run.").

**C.  The Chapter 93A Claims**

Chapter 93A protects consumers from "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  Mass. Gen. Laws ch. 93A, § 2.  In order to pursue a claim under this statute, an injured consumer must, "[a]t least thirty days prior to the filing of any such action, [mail or deliver] a written demand for relief . . . ."  Mass. Gen. Laws ch. 93A, § 9.  Furthermore, actions arising under Chapter 93A "shall be commenced only within four years next after the cause of action accrues."  Mass. Gen. Laws ch. 260, § 5A; see also Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013) ("The limitations period for chapter 93A is four years from injury." (citing Mass. Gen. Laws ch. 260, § 5A)).

Massachusetts has a discovery rule that triggers the accrual of the cause of action for purposes of the statute of limitations "when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct."  Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) (quoting Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 741 (Mass. 1990)).

Sheedy argues that WAMU behaved in a way that was unfair and deceptive by not delivering all required material disclosures and by misrepresenting some of the terms disclosed. She claims that "[t]he totality of the circumstances surrounding this transaction fully warrant a conclusion that Sheedy was misled into entering into a refinancing that was not in her best interests . . . ." Yet, Sheedy tells us that she knew at the time of the 2004 Transaction that her husband did not receive the required disclosures she now claims he should have received. Moreover, she should have known immediately upon receiving the loan documents that different amounts were listed by WAMU in the Truth in Lending statement and the Note itself. See Latson, 708 F.3d at 327 ("Here the interest terms and the implications of their burdens were apparent when the [borrowers] signed and got their money, a conclusion underscored by the Massachusetts rule that the terms of written agreements are binding whether or not their signatories actually read them.") (citing St. Fleur v. WPI Cable Sys./Mutron, 879 N.E.2d 27, 35 (Mass. 2008)). Therefore, any claim under Chapter 93A is time-barred because Sheedy's four-year limitations period began when she entered into the loan in 2004.[9]

---

[9]  Insofar as we conclude that Sheedy's Chapter 93A claim is time-barred, we need not venture into whether her discussion of WAMU's conduct in the Chapter 13 plan constituted sufficient written demand for relief as required by Massachusetts General Laws Chapter 93A, § 9.

## D.  Rescission in Recoupment

As part of the discussion of her alleged state law claims, i.e., common law fraud and Chapter 93A, Sheedy also advances in her brief the argument that her request for rescission in recoupment is immune from any limitations period because the equitable remedy of recoupment can be raised defensively at any time.  We first describe these remedies by noting that recoupment is fundamentally different from rescission.  See In re O'Connell, No. 11-10940, 2012 WL 2685149, at *5 (Bankr. D. Mass. July 6, 2012) ("Recoupment and rescission are [like] apples and oranges.").  On the one hand, "[r]escission affects a return to the status quo." Schwartz v. Rose, 634 N.E.2d 105, 109 (Mass. 1994).  It "is the 'unmaking' or 'voidance' of a contract."  May v. SunTrust Mort., Inc., 7 N.E.3d 1036, 1042 (Mass. 2014) (quoting Black's Law Dictionary 1420-21 (9th. ed. 2009)).  Thus, in order to obtain rescission of a transaction, the party requesting such remedy "must restore or offer to restore all that he received under it." Bellefeuille v. Medeiros, 139 N.E.2d 413, 415 (Mass. 1957) (citations omitted).  On the other hand, recoupment "allows a defendant to 'defend' against a claim by asserting -- up to the amount of the claim -- the defendant's own claim against the plaintiff growing out of the same transaction."  Bolduc v. Beal Bank, SSB, 167 F.3d 667, 672 (1st Cir. 1999)  There is no time limit to raise recoupment as a defense.  See May, 7 N.E.3d at 1043

-17-

("[T]he right to recoupment contains no time limitations on assertion of the right. This accords with the common-law understanding of recoupment as a defensive mechanism whereby a defendant may, at any time, assert claims against the plaintiff in reduction of the plaintiff's claims when those claims arise out of the same transaction; it is an offsetting of liabilities within a transaction." (alteration omitted) (citing Bose Corp. v. Consumers Union of U.S., Inc., 326 N.E.2d 8 (Mass. 1975))); see also Bull v. United States, 295 U.S. 247, 262 (1935) (explaining that recoupment is allowed "in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded [and that it] is never barred by the statute of limitations so long as the main action itself is timely").

In the instant case, this means that if Sheedy is granted the requested relief of rescission in recoupment, she would be allowed to avoid the Secured Creditor's foreclosure action by reviving her own claim arising under the 2004 Transaction. That would result in rescission being a "setoff" against foreclosure. Yet, in recoupment, there is a difference between a defendant obtaining damages caused by a plaintiff and the defendant obtaining rescission of a mortgage-secured obligation owed to the plaintiff. See Beach, 523 U.S. at 411 ("Since a statutory rescission right could cloud a bank's title on foreclosure, Congress may well have chosen to circumscribe that risk, while permitting recoupment of

-18-

damages regardless of the date a collection action may be brought."); see also May, 7 N.E.3d at 1042. Thus, the question becomes whether rescission is available to Sheedy in recoupment.

Under Massachusetts common law, "recoupment and rescission were consistently treated as separate, nonoverlapping remedies [,] . . . as [these] are inconsistent remedies, a person who has once elected to pursue one of them cannot afterwards seek the other." May, 7 N.E.3d at 1042 (alterations omitted) (citations and internal quotation marks omitted). Despite this apparent preclusion of rescission in recoupment, Sheedy argues that the Supreme Judicial Court's decision in May does not impede her from obtaining such relief. In that case, debtors in a position equivalent to Sheedy's filed an adversary proceeding against a creditor, also within a Chapter 13 bankruptcy case, seeking rescission of a home-refinancing loan transaction. The statute at issue in May, however, was not Chapter 93A. Instead, it was the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D, §§ 1-35, the TILA-equivalent state statute that "governs the rights and duties of creditors and obligors (borrowers or consumers) engaged in consumer credit transactions . . . [including] the refinancing of a consumer's home where the consumer grants a mortgage to the creditor to secure the refinancing loan." May, 7 N.E.3d at 1037. The Supreme Judicial Court concluded that rescission is not a remedy in recoupment for violations of the

-19-

MCCCDA, in part because under the "common-law[,] recoupment does not include the use of rescission as a form of recoupment." Id. at 1043.

Sheedy's attempts to distinguish May from the present case are fruitless. Pointing to no supporting source, Sheedy asks us to conclude that, while Massachusetts law does not allow rescission in recoupment in claims arising under the MCCCDA, the legislative intent can easily be avoided by any defendant raising an identical claim as a "Chapter 93A claim." That is, without explanation, Chapter 93A permits a defendant to revive in recoupment what the legislature expressly wanted foreclosed by the statute of limitations under the statute intended to protect such borrower. We are unpersuaded. Even the May court's statement of the question before it directly addresses and forecloses the issue in the instant case: whether any "laws of the Commonwealth pertaining to recoupment provided for or recognize rescission as a form of recoupment, at least where rescission is used defensively to meet an obligation due." Id. at 1041. In answering this question in the negative, the Supreme Judicial Court emphasized that a borrower could seek rescission -- where allowed -- but not in recoupment. Id. at 1043 ("[R]ecoupment and rescission are separate, and common-law recoupment does not include the use of rescission as a form of recoupment."). Furthermore, May recognizes that it is possible for a future plaintiff to have a defensive

claim for damages under Chapter 93A that could be raised in recoupment, but not a claim for rescission. Id. at 1044 n.17 ("Here, however, because the plaintiffs' claim alleging a violation of G.L. c. 93A is tied to their asserted right to rescission, which does not exist, their c. 93A claim currently does not appear to offer relief.").

Sheedy only offers one argument to differentiate her case from May, stating that since "Sheedy is proceeding under the federal statute, [May] does not control since it applies only to the [TILA-equivalent] state statute." This argument contradicts another statement in Sheedy's brief that the reason we should ignore the statute of limitations applicable to her TILA claim in the first place is that a plaintiff may preserve "a right of rescission under Chapter 93A of the Massachusetts General Laws." Moreover, in her complaint, Sheedy's sole remedy request under Chapter 93A was for rescission. Thus, we conclude that, inasmuch as May does not allow rescission in recoupment under the MCCCDAA, and rescission in recoupment is not allowed pursuant to Massachusetts common law, Sheedy has not advanced anything to support that -- based on the same facts -- a defendant may circumscribe the statutes to revive such a claim through Chapter 93A. Consequently, Sheedy may not assert a claim for rescission in recoupment under Chapter 93A.

## E. The Fraud, Deceit, and Misrepresentation Claim

Sheedy argues that the "forensic audit report" obtained from MFI-Miami found that the terms of the Truth in Lending statement contradict the terms of the loan because the payment due on the sixty-first month turned out to be $4,055.05, instead of the $4,331.58 that WAMU disclosed to her. Thus, because she was notified when she entered into the loan that she would have to pay a higher amount than what she ended up having to pay, she was necessarily deceived. Another such example of claimed deceit and misrepresentation is the fact that the Note stated that she would have to pay $4,109.56 per month for the first sixty months, but she was only required to pay $2,446.88 each of these months. Accordingly, Sheedy stresses that WAMU induced her into entering a loan with false and misleading information.

As a preliminary observation, while it may be a violation of federal and state laws and regulations in some circumstances, Sheedy does not explain how telling a borrower that she will be responsible for a higher amount than what is actually demanded of her fraudulently induces such a borrower into entering a loan that she would not have otherwise executed.[10] In any event, Sheedy's argument is misleading because the amount actually paid by her

---

[10] We do not rule out that some borrowers may be defrauded by entering into contracts that demand higher payments than what are actually required of them, e.g., when a borrower expects lower overall interest expense based on higher payments up-front.

during the initial sixty-month period was based on the addendum to the Note and not on what the Note itself provided.

To successfully pursue a fraud claim under Massachusetts law, Sheedy had to establish that "(1) [WAMU] made a false representation with knowledge of its falsity for the purpose of inducing plaintiffs to act thereon; (2) that [Sheedy] relied upon the representation as true and acted upon it to [her] detriment; and (3) that [her] reliance was reasonable under the circumstances." FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 105-106 (1st Cir. 2009) (citing Rodi v. S. New Eng. Sch. of Law, 532 F.3d 11, 15 (1st Cir. 2008)).

We take these elements in that order, beginning with the knowledge element. Because Sheedy does not argue that WAMU had knowledge of the falsity of the information, we assume that she implies that it should have been apparent to WAMU that the Note and the Truth in Lending statement contained different information, and that one of the numbers was wrong. However, absent more detailed evidence, it is not obvious that a payment amount provided in the disclosure is deceptive when the interest rate is variable -- by its own terms the payment amount will be the result of applying the interest formula at a future time. See 12 C.F.R. § 226.18(f) (listing the required disclosures for variable rate). Even assuming that the variable payment amounts could be predicted and that WAMU should have had knowledge that the amounts disclosed in

-23-

the two documents were different, Sheedy still failed to establish the remaining elements.

Sheedy's arguments also fail when it comes to the reliance element. She first recognizes that the details disclosed by WAMU were contradictory and that "any reasonable person would be confused by this discrepancy[,]" yet she claims that she still relied on the higher payment amounts represented by WAMU and acted upon them to her detriment. Sheedy does not argue that this resulted in any specific harm. Instead, she simply asks that we find quite irrationally that she was harmed by the alleged fraud based on the fact that she was later required to make lower payments.

Finally, Sheedy does not establish how her reliance on "confusing" and "contradictory" disclosures was reasonable under the circumstances, especially in light of the facts that she had been in the real estate industry and had a real estate broker license since the early 1980s. See Yorke v. Taylor, 124 N.E.2d 912, 916 (Mass. 1955) (noting reliance cannot be deemed reasonable when alleged misrepresentation is "palpably false").[11]

---

[11]    Because we conclude that Sheedy's allegations on appeal are insufficient to establish her underlying fraud claim, we need not examine the effects of the MFI-Miami report's exclusion or the Secured Creditors arguments that any liability by WAMU was retained by the FDIC.

**F. The Objection to the Secured Claim**

Sheedy presents on appeal a short conclusory argument that the Secured Creditors did not explain why their claim for costs and attorney fees is "reasonable and necessary," and thus the claim should be disallowed. Additionally, citing to In re Plant, 288 B.R. 635 (Bankr. D. Mass 2003), without any effort to develop an argument, Sheedy states simply that the Secured Claim does not comply with the court's rule for allowing attorney fees. Sheedy does not state what those rules are.[12] We think this is nothing more than a skeletal presentation of the argument; it is thus waived.[13] See Matt v. HSBC Bank USA, N.A., 783 F.3d 368, 373 (1st Cir. 2015) ("These issues are stated 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting Zannino, 895 F.2d at 17)).

**G. Deutsche Bank's Standing as Sheedy's Creditor**

In essence, Sheedy's standing challenge is that Deutsche Bank cannot enforce the Mortgage against her because it was

---

[12] In re Plant includes a detailed explanation of the applicability of Federal Rule of Bankruptcy Procedure 2016 and Massachusetts Local Bankruptcy Rule 2016-1. 288 B.R. at 663-64. Those rules in turn list a number of requirements for applications for compensation and fees against the estate. Sheedy does not explain how these were not followed.

[13] The district court found the Secured Creditors had presented an affidavit with sufficient information for Sheedy to explain what her objection was.

transferred into the Securitized Trust in violation of the PSA, six years after the trust was created. However, it is Sheedy who lacks standing to challenge Deutsche Bank's claim against her on this ground. Sheedy cannot question Deutsche Bank's status as her creditor unless she "challenge[s] a mortgage assignment as invalid, ineffective, or void[,]" rather than as an assignment that is only "voidable." Culhane v. Aurora Loan Services of Nebraska, 708 F.3d 282, 291 (1st Cir. 2013). Yet a valid challenge for violations of the terms of a PSA would result in the assignment being voidable and not void. Butler v. Deutsche Bank Tr. Co. Americas, 748 F.3d 28, 37 (1st Cir. 2014) ("Under Massachusetts law, it is clear that claims alleging disregard of a trust's PSA are considered voidable, not void.").

## III. Conclusion

For the foregoing reasons, we affirm the grant of summary judgment in favor of the Secured Creditors.

**Affirmed.**